ZEHMER, Judge,
dissenting.
I do not agree that the appealed order should be affirmed. I conclude that the inordinate delays and multiple statutory time limit violations by the Department of Professional Regulation and the Board of Optometry require reversal and remand with directions to dismiss the charges. I do not agree with the majority opinion that Appellant was required to show actual prejudice under the test enunciated by the supreme court in Department of Business Regulation v. Hyman, 417 So.2d 671 (Fla.1982), and that such test should be applied to the facts of this case. I do agree, in view of the majority’s decision to affirm Appellant’s conviction, that the fine must be reduced to $1,000 as stated in the majority opinion.
I.
This administrative proceeding commenced on May 13, 1986, when a former patient filed a complaint against Appellant with the Department. The matters complained of were essentially twofold. The first related to Appellant’s treatment of the patient through the use of a program of orthokeratology[1] from 1979 to September 1982. The second involved Appellant’s failure to make arrangements for direct referral of the patient to an ophthalmologist practicing retinal specialty on September 7, 1982, when Appellant examined the patient and concluded that he was probably suffering from a torn or detached retina as a result of an accidental injury to his left eye four days previously.
When the patient’s complaint was filed,[2] the Department promptly notified Appellant that the investigation thereof would be completed within 45 days. However, the investigation was not completed within that time period. Not until March 19, 1987, some 10 months later, was the initial investigation completed by the Department’s investigator and the file sent to the Department in Tallahassee for a probable cause determination. The Department then referred the file to the Probable Cause Panel of the Board of Optometry, but the panel did not take up the matter until June 13, 1987. The panel determined that it needed further information, so the Department, on July 15, 1987, retained another expert to provide additional investigation and information to the Probable Cause Panel. On September 21, 1987, this expert sent additional information to the panel. On November 6, 1987, the panel considered the matter for a second time and found probable cause for the Department to file a complaint against Appellant. This finding was referred back to the Department, and on February 16, 1988, some 21 months after the patient had lodged his complaint, the Department filed an administrative complaint alleging violations in five counts. The counts charged, respectively: (1) Appellant’s treatment of the patient with or-thokeratology was inappropriate because of the patient’s high degree of myopia and, further, that Appellant’s follow-up care of *83 orthokeratology was inadequate; (2) Appellant prescribed orthokeratology for the patient to facilitate charging a higher fee than Appellant could have charged for other more appropriate treatment; (3) Appellant was negligent, incompetent, or engaged in misconduct in the practice of optometry in violation of section 463.016(l)(g), Florida Statutes, by reason of his negligence in treating the patient for an injury to the eye which evidenced symptoms of a tom or detached retina and failing to refer the patient to a qualified ophthalmologist for emergency treatment; (4) Appellant’s records were altered or made after the fact and Appellant engaged in fraud, deceit, and misconduct thereby; and (5) Appellant’s treatment and examination of the patient amounted to gross and repeated malpractice in violation of section 463.016(l)(n), Florida Statutes.
Appellant timely requested a section 120.57(1) formal hearing, and also filed a motion to dismiss the complaint on grounds that the Department and the Board had violated the time limits contained in section 455.225, Florida Statutes (Supp.1986), in several material respects. The case was referred to the Division of Administrative Hearings (DOAH) on April 26, 1988, over two months after the administrative complaint was filed. Appellant’s motion to dismiss was heard by a DOAH hearing officer on July 19, 1988. The hearing officer accepted the Department’s argument and denied the motion by an order dated August 9, 1988, ruling that
any time limits set out in Section 455.-225(2) and (3), Florida Statutes, were designed to assure adequate reporting between the Department of Professional Regulation, the Board of Medical Examiners [sic] and the Probable Cause Panel of the Board, and the failure to time [sic] comply with these time frames, if such was the case, was not jurisdictional since there had been no showing by the Respondent that he was in any way prejudiced by the alleged delays. This ruling was without prejudice to the Respondent coming forward at the final hearing to show that he was in fact prejudiced.
The final hearing was held September 26 and 27, 1988, and the hearing officer’s recommended order was forwarded to the Board on March 8, 1989. The hearing officer found Appellant guilty of the charges in counts 3 and 5 regarding the failure to refer the patient to an ophthalmologist, and exonerated him of the other three charges.
To briefly summarize, the hearing officer’s recommended order found that Appellant told the patient on September 7, 1982, to see an ophthalmologist the next morning, but that the standard of care applicable under those circumstances required Appellant to call an ophthalmologist that evening and make a referral, and if Appellant could not reach the ophthalmologist, he should leave a message explaining the emergency nature of the circumstances. The hearing officer also found that this conduct amounted to gross or repeated malpractice in view of a prior disciplinary order entered against Appellant in 1981. Finally, regarding Appellant’s motion to dismiss the complaint based on the numerous section 455.225 time limits violations, the order only recited in paragraph 41 that, “Although the record reveals that Petitioner [Department] has not always timely complied with time limits set out in Section 455.225(2) and (3), Florida Statutes, there has been no showing by the Respondent that he was prejudiced by the delays.”
On October 11, 1989, the Board entered its final order approving and adopting the findings of fact and conclusions of law in the hearing officer’s recommended order. However, the Board reduced the recommended penalty from a two-year suspension to a six-month suspension of Appellant’s license, and reduced the recommended administrative fine from $5,000 to $2,000. Appellant has appealed this final order.
II.
It is necessary to set forth the parties’ arguments in greater detail than usual to accurately appreciate their widely divergent views of the facts and law relating to this particular issue.
*84 A.
Appellant argues that the time limits in section 455.225 were flagrantly violated in at least four respects, and that these violations have resulted in the deprivation of his right to constitutional due process because he was hampered in defending against a stale claim. Appellant states that the time limits in section 455.225 govern the investigation of consumer complaints and the disposition thereof by the Department and the Board, and that neither the Department nor the Board has justified its failure to comply with the time limits, nor did they seek and obtain any extensions of time from the Secretary of the Department as provided in the statute. Appellant quotes Kibler v. Department of Professional Regulation, 418 So.2d 1081 (Fla. 4th DCA 1982), regarding the Department’s failure to follow procedural guidelines:
The adherence to rules and statutes by the very agency charged with their enforcement is especially necessary if the public and the parties regulated are to maintain respect and confidence in the decisions rendered by the agency. It is one thing to seek revision or removal of unnecessary or burdensome rules and regulations. But to ignore such rules while they remain in force is to invite disrespect and will ultimately result in a breakdown of the system.
418 So.2d at 1084. Accord Turner v. Department of Professional Regulation, 460 So.2d 395 (Fla. 5th DCA 1984). Appellant points out that in respect to violations of the time constraints set forth in chapter 120, the Administrative Procedure Act, for which the legislature has not provided a specific sanction, relief to an aggrieved party is appropriate if it is shown that the agency’s failure to comply with mandatory time requirements constitutes a material error in procedure that impairs the fairness of the proceeding or the correctness of the action, citing Department of Business Regulation v. Hyman, 417 So.2d 671 (Fla.1982); G & B of Jacksonville, Inc. v. State of Florida, Department of Business Regulation, 362 So.2d 951 (Fla. 1st DCA 1978), appeal dismissed, 372 So.2d 468 (Fla.1979); City of Panama City v. Florida Public Employees Relations Commission, 364 So.2d 109 (Fla. 1st DCA 1978). Based on these principles, Appellant argues that it was error not to dismiss the Department’s complaint based on the four specific violations of the subsections 455.225(2) and (3) time limits.
Section 455.225(2) provides that, “The department shall expeditiously investigate complaints.” Appellant argues that investigating a patient’s complaint for some 21 months, from May 13, 1986, when it was filed, until February 16, 1988, when the Department filed its formal administrative complaint, was anything but expeditious, and far in excess of the 45 days stated in the Department’s letter sent to him when the patient’s complaint was filed. He points to evidence at the final hearing establishing that the Department’s operating manual provides that such investigations should be concluded within 45 days, which Appellant construes to be the Department’s interpretation of the statutory meaning of “expeditiously” used in section 455.225(2). Appellant then describes the process of the investigation, pointing out that investigation materials were given to Dr. McAuliffe on September 5, 1986, but his report was not forthcoming until 52 days later, on October 27, 1986; and that materials were given to Dr. James Lanier on November 3, 1986, but his report was not received until four months later in March 1987. The record establishes that the Department did not consider the investigation complete until March 19, 1987, when the file was sent to Tallahassee by the investigator ten months after the investigation was commenced.
Appellant contends that specific time limits in subsection 455.225(3) were violated in at least three respects. First, Appellant argues, the Department and the panel failed to comply with the requirement that additional investigative information must be requested by the Probable Cause Panel within 15 days after receipt of the investigative report. The Department’s investigation was completed on March 19, 1987, some ten months after the initial complaint had been filed. The matter was referred to and first considered by the Probable Cause *85 Panel on June 13, 1987. On July 15, 1987, the Department retained another expert to provide additional information to the panel, but the information was not supplied until September 21, 1987. Thus, Appellant argues, the Probable Cause Panel did not convene to consider the matter until June 13, some 95 days after the investigative report was filed in Tallahassee. The panel did not make its request for additional information until July 15, or 32 days after the panel had met. No request for any extension of the 15-day time limit was made of the Secretary, and no explanation for this delay and failure to meet this time limit has ever been offered by the Department or the Board’s Probable Cause Panel. Thus, Appellant argues, the statutory 15-day requirement was flagrantly violated.
Second, Appellant points out that the final investigative information was supplied to the Department and the Probable Cause Panel on September 21, 1987, and thus the panel was required by subsection 455.-225(3) to make its determination within 30 days thereof. Yet, the panel did not even meet to consider the additional information until November 6, 1987, 46 days thereafter. Neither the panel nor the Department acted within the 30-day time limit required by the statute, Appellant argues, nor did they request any extension from the Secretary and have offered no justification for their failure to do so.
Third, Appellant contends that the Department was required by subsection 455.-225(3) to complete this matter or refer it to the Board within one year of the filing of the patient’s complaint on May 13, 1986. However, the Department’s administrative complaint was not filed until February 16, 1988, a period of 21 months, and the matter was not referred to the Division of Administrative Hearings until April 26, 1988, nearly two years after the patient’s complaint against Appellant had been filed. Neither the Board nor the Department has provided any explanation or justification for this failure to comply with this statutory requirement.
Appellant further argues that the hearing officer and the Board erred in concluding that he had the burden of proving prejudice as a result of the agency’s time limit violations. He contends that the legal test is whether the fairness of the proceedings was impaired as a consequence thereof, referring to the cases cited previously. The fairness of the proceedings, Appellant argues, was impaired in several respects that resulted in the denial of his constitutional right to due process. Appellant contends that the Fifth and Fourteenth Amendment guarantees of procedural due process apply to these administrative proceedings, and that any denial of due process as a result of unreasonable delay in conducting the hearing may be raised on appeal from the final order at the conclusion of the administrative proceeding, citing Gordon v. Savage, 383 So.2d 646, 649 (Fla. 5th DCA), pet for rev. denied, 389 So.2d 1110 (Fla.1980). Acknowledging there is a “paucity of Florida case law on this issue,” Appellant cites to a decision of the New Hampshire Supreme Court, The Appeal of Plantier, 126 N.H. 500, 494 A.2d 270 (N.H.1985), for the propositions that a licensee’s procedural due process right could be violated upon a showing that the licensee has been harmed by delay in bringing the complaint, that the delay affected the licensee’s ability to defend the charges, and that the Department, having knowledge of the alleged misconduct, slept on its rights.
Appellant further argues that the hearing officer’s recommendation that he failed to establish any prejudice from the delays is not supported by competent, substantial evidence because the only evidence in the record establishes that he was in fact hampered by such delays in his defense of all five charges brought by the Department’s complaint. For example, Appellant points out that he no longer has his original records to use in the defense of these charges because they were subpoenaed from him in the civil litigation, and he does not have records to determine who was working for him at relevant times to assist in identifying witnesses. He asserts that he no longer has his September 1982 appointment book that would assist him in refuting allegations by his former patient regarding the *86 nature of the advice given to him by Appellant on September 7, 1982, although that was a key issue in the case. Appellant complains that he no longer has his office records, day sheets, and employee records dating back to September 1982 to assist in his defense, parenthetically noting that the Board requires its licensees to retain their patient records for only two years pursuant to rule 21Q-3.03 [now 21Q-3.003], Florida Administrative Code. Appellant asserts that the prolonged delay in filing and prosecuting the charged violations affected the complaining patient’s ability to recall crucial events at the final hearing, and that the patient acknowledged that his memory was unclear because of the lapse of time. As examples, Appellant states that the patient could not remember having appointments with other professionals concerning similar symptoms, and that although the patient had seen an ophthalmologist in St. Augustine for very similar symptoms, he could not recall at the final hearing that he had done so. Appellant argues that the hearing officer and the Department ignored the repeated inability of the complaining patient to recall significant and crucial events, such as being treated for such symptoms by others and receiving from them advice similar to that given to him by Appellant. Appellant characterizes the patient’s failed memory as selective, in that he testified for the Department on direct examination with surprising clarity and recall, while on cross-examination he was unable to remember other important events. As a result, Appellant argues, the delay in hearing the charges deprived him of a fair hearing. Appellant further argues that there is no evidence that he contributed to the delay in completing the investigation or the filing of the complaint, and that the inordinate delay was due solely to the Department’s and the Board’s flagrant violation of the section 455.225 time limits in violation of his due process right to a fair hearing.
B.
Responding to these arguments, the Department contends that there is no statutory requirement to complete an investigation within 45 days; that the Department conducted its investigation expeditiously with due regard to Appellant’s procedural and substantive rights; and that Appellant misreads the purpose and intent of section 455.225. Section 455.225(3), the Department argues, was only intended to give the Board a remedy against the Department to insure that cases over a year old that had neither been referred to DOAH nor investigated completely would be handled by a special Board prosecutor. Thus, section 455.225(3) does not authorize dismissal as a remedy for failure to investigate within a year, but envisions that some investigations may take over a year to complete.
In this case, the Department contends, “the completion of the investigation was complicated by the fact that the complainant had moved away from the area where the events giving rise to the complaint took place, the documents were lengthy and the investigation required the use of multiple consultants.” (Ans.Br. p. 7.) The Department argues that “any irregularities related to probable cause were not in any sense jurisdictional, especially in light of the panel’s attempt to reconstitute its finding and cure any alleged error,” citing Beckum v. State, Department of Professional Regulation, 427 So.2d 276 (Fla. 1st DCA 1983). Relying on School Board of Leon County v. Weaver, 556 So.2d 443 (Fla. 1st DCA 1990), the Department urges that, just as the failure by the Florida Commission on Human Relations to file a final order for some ten months after issuance of the recommended order did not merit reversal because no impediment to the fairness of the procedure nor correctness of the action taken was demonstrated, so also in this case “the hearing officer held that any time limits set out in section 455.225(2) and (3) were designed to assure adequate reporting between the Department, the Board, and the Probable Cause Panel and that failure to comply with these time guidelines, if such was the case, was not jurisdictional inasmuch as the Appellant made no showing of prejudice.” (Ans.Br. p. 8.) Continuing, the Department argues:
*87 In his recommended order the hearing officer found as a matter of fact that no such prejudice had occurred. This finding is clearly supported by the record in this case. There is no dispute that the allegations for which Appellant was found guilty were the subject of civil litigation in which Appellant was an active participant. The civil litigation had concluded when the patient complained to the Department. In fact, part of the investigative file consisted of testimony from the civil litigation. Appellant was given an opportunity to submit materials for consideration by the probable cause panel. Most important, the finding of fact which is central to the violation found in this case is one that Respondent did not dispute: that he did not immediately refer [the patient] to an ophthalmologist the night that he saw him and did not follow up the next day. He did not claim any inability to remember the details about the incident and still had the patient records related to treatment.
(Ans.Br. p. 9.)
The Department characterizes Appellant’s argument on this point as essentially a plea of laches, which is not available in an administrative proceeding, citing Farzad v. Department of Professional Regulation, 443 So.2d 373 (Fla. 1st DCA 1983); Landes v. Department of Professional Regulation, 441 So.2d 686 (Fla. 2d DCA 1983), pet. for rev. denied, 451 So.2d 849 (Fla.1984); and Donaldson v. State, Department of Health and Rehabilitative Services, 425 So.2d 145 (Fla. 1st DCA 1983). The Department argues that there was no prejudice because Appellant “never claimed an inability to remember the facts of this case; in fact his memory of the details was no doubt heightened by the civil litigation,” and that Appellant testified in detail regarding “the evening of October 7, 1982 [sic], had patient records regarding the treatment rendered and produced a witness who was in the office and to some extent was able to corroborate his story. No additional records or testimony by other employees would change what Appellant essentially admitted: he did not refer the patient to an ophthalmologist that night and did not follow up the next day.” (Ans.Br. p. 9-10.)
C.
In reply, Appellant argues that he “consistently requested the Department to expedite its investigation and resolution of this matter,” and this is a crucial fact that distinguishes this case from the decision in School Board of Leon County v. Weaver, 556 So.2d 443. (Reply Br. p. 3.) Appellant focuses attention on the fact that at no time did the Department or the Board obtain extensions of time from the Secretary, as required by the statute. He observes that the Department’s reliance on the complainant’s absence from the area and the voluminous nature of the documents and use of multiple consultants “cannot withstand scrutiny” because the complaining patient was seen one time by a departmental investigator at which time he turned over copies of various records, and the “only contact [with him] thereafter was by counsel for the Department shortly prior to the final hearing.” Moreover, Appellant argues, the Department “never denies that it failed to give the consultants deadlines within which to complete their task,” and its investigator “candidly admitted that the Department has ‘to be patient with’ its consultants given the consultant’s demands in private practice.” (Reply Br. p. 2.) Finally, Appellant contends that the Department misses the point in characterizing his argument as based on laches, and that the record shows without dispute that he was substantially hampered in presenting a defense to the charges due to the inordinate delay, in violation of his right to constitutional due process.
III.
I agree with the majority opinion that the time limits set forth in section 455.225, Florida Statutes (Supp.1986), have far more significance in according rights to a licensee such as Appellant than has been attributed to that section by the hearing officer, the Department, and the Board. I disagree with the majority that when violation of the time limits is shown, the only remedy is for *88 the licensee to show substantial prejudice due to the delay.
A.
The requirement in subsection 455.225(2) that the Department “expeditiously investigate complaints” is not an idle recitation, but a mandatory directive to act promptly for the protection of the public as well as to assure timely due process to the licensee. The 45-day period set forth in the Department’s manual is in accord with this intent. Concisely stated, subsection 455.225(2) requires the Department to expedite its own investigation, promptly make a determination of probable cause, and submit its report to the Probable Cause Panel of the Board within the time limits set forth in subsection 455.225(3). Subsection 455.-225(3) provides in part:
In aid of its duty to determine the existence of probable cause, the probable cause panel may make a reasonable request, and upon such request the department shall provide such additional investigative information as is necessary to the determination of probable cause. A request for additional investigative information shall be made within 15 days from the date of receipt by the probable cause panel of the investigative report of the department. The probable cause panel or the department, as may be appropriate, shall make its determination of probable cause within SO days after receipt by it of the final investigative report of the department. The secretary may grant extensions of the 15-day and the 30-day time limits. If the probable cause panel does not find probable cause within the 30-day time limit, as may be extended, or if the probable cause panel finds no probable cause, the department may determine, within 10 days after the panel fails to determine probable cause or 10 days after the time limit has elapsed, that probable cause exists. If the probable cause panel finds that probable cause exists, it shall direct the department to send the licensee a letter of guidance or to file a formal complaint against the licensee. The department shall follow the directions of the probable cause panel regarding the filing of a formal complaint; and, if directed to do so, the department shall file a formal complaint against the regulated professional or subject of the investigation and prosecute that complaint pursuant to the provisions of chapter 120. However, the department may decide not to prosecute the complaint if it finds that probable cause had been improvidently found by the panel. In such cases, the department shall refer the matter to the board. The board may then file a formal complaint and prosecute the complaint pursuant to the provisions of chapter 120. The department shall also refer to the board any investigation or disciplinary proceeding not before the Division of Administrative Hearings pursuant to chapter 120 or otherwise completed by the department within 1 year of the filing of a complaint.
(Emphasis added.)
Subsection 455.225(3) contemplates that the Probable Cause Panel may need more information than that supplied in the Department’s investigative report to reach a decision, and explicitly authorizes the panel to request the Department to furnish it “such additional investigative information”; but the subsection also provides that the panel’s request shall be made within 15 days from its receipt of the investigation report of the Department. This subsection further contemplates that the panel or the Department shall determine the presence or absence of probable cause within 30 days after receipt of the Department’s final investigative report, which means within 30 days after the Department has furnished the additional investigative information requested. Recognizing that not all investigative proceedings to determine probable cause can be accomplished within the stipulated 15-day and 30-day time limits, section 455.225(3) further authorizes the Secretary of the Department to grant reasonable extensions of these time limits.
A fair reading of the plain language of the subsection can lead to only one meaning — the 15-day and 30-day time limits are *89 binding and terminate the probable cause panel’s power to act further in the case unless reasonable time extensions have been sought and obtained from the Secretary. This is made clear by the provision in subsection 455.225(3) that requires, when the Probable Cause Panel does not make its determination within the stated 30-day time limit or within the time limit as extended by the Secretary, the Department has “10 days after the time limit has elapsed” to make its own determination as to whether probable cause exists. This provision insures that the Board’s panel will promptly make its determination within the set time periods, and that upon the panel’s failure to do so, the matter will, by operation of law, be removed from the panel’s jurisdiction and passed to the Department for its expeditious handling and decision. Significantly, there is no provision in the statute for the Secretary or anyone else to further extend this 10-day time limit on the Department’s action after the panel has failed to act.
Finally, subsection 455.225(3) imposes a time limit of one year between the filing of a consumer (patient) complaint and the Department’s referral to the appropriate board of “any investigation or disciplinary proceeding not before the Division of Administrative Hearings pursuant to chapter 120 or otherwise completed by the department.” This unambiguous provision reinforces the legislative intent that disciplinary matters under consideration by the Department must either be completed or referred to DOAH or the appropriate board expeditiously, that is, within one year of the filing of the consumer complaint. No exceptions or authority to grant extensions of this one-year time limit is provided in the statute.
I assume that the legislature used the words “time limit” in subsection 455.225(3) advisedly to communicate clear legislative intent that complaints against licensed professionals regulated by the Department and its boards are to be expeditiously processed without unjustifiable delay. This expeditious handling of complaints serves to protect the public from potential harm or injury caused by violations of the law and standards governing the professional’s practice. Of course, these time limits also accord to the licensee complained against the right to a speedy determination of the matters giving rise to the complaint; they also provide protection against the obvious prejudice that flows from unreasonable delays, such as loss of documents, unavailability of witnesses, and “fading memories.” These statutory provisions unambiguously manifest legislative intent to place a high priority on compliance with the stated time limits by permitting extensions thereof only at the discretion of the Secretary as the highest official in the Department, no doubt because the Secretary is directly responsible to the Governor for strict performance by the Department and its boards of the duties and obligations imposed upon them by law. Of course, a request for extension made by a panel, board, or departmental representative to the Secretary would have to justify the requested extension of the time limits on reasonable and valid grounds; otherwise, the granting of an extension would amount to nothing more than an arbitrary decision and directly thwart the basic purpose and intent underlying the legislatively imposed time limits.
Again, I would emphasize that these statutory time limits are not to be ignored and disregarded by the Department and its boards; they are to be honored and obeyed unless extensions have been approved by the Secretary. Failure to adhere to the stipulated time limits and reasonable extensions granted by the Secretary places the burden on the Department and its boards to establish legally sufficient justification for their unauthorized deviation from the requirements of the statute, if in fact such deviations can be excused.[3]
Thus, I decline to treat violations of the time limits in subsections 455.225(2) and (3) as mere technicalities having no signifi- *90 canee to Appellant unless he is able to prove substantial prejudice. I reject the argument that the time constraints in those subsections are intended merely to provide a remedy for the Board against the Department, and to facilitate communication and reporting between the Department and its boards. Section 455.225 governs the procedure for handling all disciplinary proceedings by the Department and boards falling under the Department. It contains procedural requirements that insure that the complained-against licensee will receive due process of law in the handling of such complaints. The Department’s argument that these time limits should not be construed for the benefit of the licensee is simply not tenable in view of the manifest purpose of that section. I disapprove the interpretation of the purpose and intent of those statutory time limits made by the hearing officer.
B.
The next step in this analysis is to address the remedies available to an aggrieved party when the statutory time limits are violated. Section 455.225 does not specify any particular sanctions to be imposed when the Department violates these statutory time limits. I cannot assume that the legislature intended these time limits to be unenforceable by appropriate remedies; to reach that conclusion would treat the statutory time limits as a meaningless enactment. Accepted rules of statutory construction preclude this construction unless no other choice exists. See Sharer v. Hotel Corp. of America, 144 So.2d 813, 817 (Fla.1962) (“It sholild never be presumed that the legislature intended to enact purposeless and therefore useless legislation.”); Smith v. Cox, 166 So.2d 497 (Fla. 2d DCA 1964) (in construing a statute, a court cannot attribute to the legislature an intent beyond that expressed).
Of course, these statutory time limits may be enforced by writ of mandamus to the offending board or the Department. See Department of Business Regulation v. Hyman, 417 So.2d 671 (Fla.1982); Lomelo v. Mayo, 204 So.2d 550 (Fla. 1st DCA 1967). However, as the majority opinion recognizes, mandamus is not the exclusive remedy for time limit violations, and failure to seek mandamus does not necessarily constitute a conclusive waiver of such violations. An aggrieved licensee may resort to other appropriate means of enforcing the time limits in section 455.225 upon a showing that the delay attributable to such violations has impaired the fairness of the administrative proceeding. Cf. Hyman; G & B of Jacksonville, Inc. v. State, Department of Business Regulation, 362 So.2d 951 (Fla. 1st DCA 1978), appeal dismissed, 372 So.2d 468 (Fla.1979).
Appellant argues that dismissal of the complaint against him is the only meaningful sanction available, considering the harmful effects of the delay in prosecuting the matter despite his repeated requests to the Department to expedite the proceeding. The Department counters with the argument that section 455.225 makes no provision for sanctions in the event of the violation of the time limits set forth therein and its provisions are not jurisdictional in the sense that a violation is grounds for dismissing the complaint or voiding the resulting order; thus, Appellant bears the burden of showing that he has been prejudiced by the delays before he is entitled to any relief.
The Department’s argument, that repeated violations of the statutory time limits must remain unremedied unless Appellant carries the burden of showing actual prejudice, does nothing to motivate the Department or the Board of Optometry to comply with the statutory time limits. Indeed, under their argument, the time limits can be violated with virtual impunity in most cases because of the difficulty a licensee will encounter in demonstrating the substantial prejudice that has been required of Appellant in this case. Their argument completely ignores the statutory provisions for reasonable extensions of the time limits upon appropriate request to the Secretary. In short, their argument makes a mockery of the statutory scheme for insuring that these matters move forward in a timely fashion.
*91 Therefore, I would hold that Appellant’s motion to dismiss, timely filed in response to the Department’s filing of the administrative complaint, alleging four violations of the section 455.225 time standards without any attempt by Department personnel or the Board to obtain reasonable extensions from the Secretary, was an appropriate procedure to obtain relief for such violations without the movant having to demonstrate, in addition, substantial actual prejudice by reason of such violations. Appellant, as the moving party, should have to establish only a prima facie case for dismissal by showing that the Board or Department violated the section 455.225 statutory time limits without having first sought and obtained extensions from the Secretary. Appellant should not be required, in addition, to carry the burden of showing actual prejudice created by such violations because the very existence of the statutory time limits establishes an inference, if not a presumption, that delay in violation thereof is prejudicial to the charged licensee. So long as Appellant has demonstrated that violations of the statutory time limits actually occurred, the Department and the Board should then have the burden of showing that such violations ought to be excused for good cause or other lawfully sufficient reasons, and further that notwithstanding their violations of the time limits, Appellant has not suffered any substantial prejudice as a result thereof. Requiring the Department and the Board to overcome Appellant’s prima facie showing of prejudice, inferred from the fact of the violations, places primary responsibility for compliance with the statutory time limits on the Department and the Board, and serves the desirable function of encouraging strict compliance with these statutory limits. Only by placing the burden of excusing such violations on the agency itself can the legislative purpose underlying the statutory time limits be effectively and fully implemented and enforced.
I do not agree that the rationale of the supreme court’s decision in Department of Business Regulation v. Hyman, 417 So.2d 671 (Fla.1982), in respect to the effect of violations of the 90-day time requirement in section 120.59(1), Florida Statutes, should be applied in this case, as the majority opinion has done.
In Hyman the supreme court held that reversal of an appealed agency order denying relief is required only if the agency’s violation of the subsection 120.59(1) time constraints has resulted in the impairment of the fairness of the proceeding or the correctness of the action. The court explained that the time requirement in section 120.59(1) must be read in conjunction with section 120.68(8), which it has characterized as “the harmless error rule for agency action.” Id. at 673. The supreme court cautioned, however, that it was not suggesting “that state agencies should be excused from following the mandates of the legislature, for there may very well be instances in which a violation of the 90-day requirement will justify reversal of agency action,” citing Pinellas County v. Florida Public Employees Relations Commission, 379 So.2d 985 (Fla. 2d DCA 1980), and City of Panama City v. Florida Public Employees Relations Commission, 364 So.2d 109 (Fla. 1st DCA 1978). Id. at 673. Each of these cited cases held that the Commission’s violation of the 90-day requirement in section 120.59(1) amounted to a flagrant disregard of the City’s rights in respect to collective bargaining, and peremptorily directed the commission to grant the relief requested by the City.
The time provision in section 120.59(1) contains no reference to sanctions for its violation, nor does it contain any provision for obtaining an extension thereof. While section 455.225 does not specify a specific sanction for violation of the several time limits, it does contain provisions for the Department or Board to obtain extensions of those limits when reasonably necessary. Thus, this section differs significantly from section 120.59(1) in providing authority for obtaining an extension of the time limits from a highly responsible official. This difference between the statutes calls for different treatment when an agency violates the time limits without even attempting to obtain a reasonable extension. *92 When an agency does not even undertake to avail itself of a statutorily-authorized remedy when the need for an extension of time arises, such indifference to the statutory requirements and the consequent violations of the statutory time limits amounts to a callous, if not intentional, disregard of the agency’s statutory duties, and must be treated differently than the isolated violation in Hyman, where no means for extending the time limits was statutorily authorized. I conclude that the agencies’ violation of the statutory time limits in this case, without even a pretext of attempting to obtain extensions of time as authorized by the statute, amounts to a flagrant disregard of Appellant’s rights under section 455.225 for which he is entitled to obtain relief by way of his motion to dismiss.
C.
I am fully aware that the standard of appellate review prescribed in section 120.-68(8) is whether “the fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure.” Therefore, Appellant has the burden of demonstrating on this appeal that such has occurred in the proceedings and action leading to the final order under review. I believe Appellant has carried that burden for the following reasons.
First, Appellant’s motion to dismiss the administrative complaint was an appropriate procedure for raising the issue of the Department’s and the Board’s violations of the section 455.225 time limits.
Second, the hearing officer correctly concluded, after the preliminary denial of Appellant’s motion to dismiss, that the matter of these violations must be heard and determined at the evidentiary hearing requested by Appellant pursuant to section 120.57.
Third, it is apparent from the arguments and my review of the record that Appellant established a prima facie case for relief based on his motion to dismiss in that he established at least four definitive violations of the time limits in section 445.225. In addition, the evidence would support inferences that Appellant was prejudiced by the delay constituting those four violations in the several respects argued, although I agree that the hearing officer could have found otherwise on the evidence.
Fourth, and most significantly, it is evident from the arguments of the parties and my review of the record that many of the evidentiary facts relied on by Appellant were disputed by the Department and the Board, and that the hearing officer was thus required to resolve these disputes with findings of fact in the recommended order. Determining whether the evidentia-ry facts and inferences to be drawn therefrom should have been found in accordance with the Department’s contention or Appellant’s contention required specific findings of fact in both the recommended order and the final order. See generally Gentry v. Department of Professional Regulation, 283 So.2d 386 (Fla. 1st DCA 1973); Ford v. Bay County School Board, 246 So.2d 119 (Fla. 1st DCA 1970); § 120.59, Fla.Stat. (1989). This was not done.
To summarize, the fairness of the proceedings and the correctness of the agency action was impaired by a material error in procedure because: (1) Appellant’s motion to dismiss was facially sufficient to require dismissal of the administrative complaint upon the undisputed showing of the Department’s and the Board’s violations of the section 445.225 time limits without any attempt to obtain an extension thereof, as prejudice should have been inferred from such violations; (2) the hearing officer and the final order relieved the Department and the Board of their respective burdens of proof to show that good cause or other lawfully sufficient grounds existed to excuse their violations of the section 445.225 time limits in view of their failure to seek and obtain extensions of time from the Secretary; (3) the hearing officer and the final order erroneously placed on Appellant the burden of showing actual prejudice before being entitled to any relief for the Department’s and the Board’s violations; and (4) even assuming such prejudice had to be shown, neither the hearing officer’s *93 recommended order or the final order contained the required findings of fact on obviously disputed evidence regarding the presence or absence of such prejudice. The absence of required findings of fact based on disputed evidence relevant to the issue of prejudice is, standing alone, an error of sufficient magnitude to require reversal and remand to the hearing officer to make such findings of fact, as it fails to comply with section 120.59(1).
IV.
For the recited reasons, I would reverse the appealed order and remand with directions that Appellant’s motion to dismiss the administrative charge be granted and the charge be dismissed. Alternatively, I would reverse and remand for legally sufficient findings of fact on the issue of prejudice, regardless of which party bears the burden of proving the presence or absence of such prejudice. In view of these dispositions, I would not reach the issue of the sufficiency of the evidence to prove the charged violations of professional standards of conduct.

. The hearing officer's recommended order defined that term as follows:
(5) Orthokeratology has been defined as the programmed application of contact lenses to reduce or eliminate refractive anomalies and to sphericalize the cornea in order to reduce myopia, contain myopia, and to bring back a more functional vision. Orthokeratology has also been used for the reduction of astigmatism.

. The record reflects that the patient brought a' civil action against Appellant that was terminated by the payment of substantial damages by Appellant and his insurer prior to the patient’s filing of a complaint with the Department.

. I do not consider what circumstances might constitute good cause for excusing such violations as neither the Department nor the Board has urged any basis for excusing the asserted violations in this case.